## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIO L. PATTERSON,

        Plaintiff

                                Case No. 21-

-v-                                Hon.

                                Magistrate

GENERAL MOTORS COMPANY, a
Delaware Corporation,

        Defendant.

_____

BOGAS & KONCIUS P.C.
BRIAN E. KONCIUS (P69278)
Attorneys for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI  48025
(248) 502-5000
bkoncius@kbogaslaw.com

---

## COMPLAINT AND JURY DEMAND

Now comes Plaintiff MARIO L. PATTERSON, by and through his attorneys, brings his complaint as follows:

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff MARIO L. PATTERSON ("Plaintiff") is a resident of the City of Adrian, State of Michigan.

2.     Defendant GENERAL MOTORS COMPANY ("Defendant") is a foreign Corporation organized under the laws of Delaware, which conducts business in and which has its headquarters and thereby resides in Wayne County, Michigan, within the Eastern District of Michigan.

3.     This action arises under the Civil Rights Act of 1964 (Title VII), 42 U.S.C.A. § 2000e, *et seq.,* and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), M.C.L.A. § 37.1101, *et seq.,*

4.     The facts and unlawful employment practices within the meaning of The Civil Rights Act of 1964, as amended 2001, 42 U.S.C. § 2000e, *et seq.* (Title VII), giving rise to this Complaint, occurred in the City of Toledo, State of Ohio in Defendant's GM Powertrain Toledo Transmission Operations (GM Powertrain Plant), City of Toledo, State of Ohio and the City of Adrian, County of Lenawee, State of Michigan.

5.     Defendant is an employer and Plaintiff was its employee within the meaning of The Civil Rights Act of 1964, as amended 2001, 42 U.S.C. § 2000e, *et seq.* (Title VII) and The Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101, *et seq.* (ELCRA).

6.     The amount in controversy exceeds $75,000.00, exclusive of costs, interests, and attorney fees.

7.     This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims).  This Court also has jurisdiction 28 U.S.C. 1332 (as the parties are diverse in citizenship and the amount in controversy exceeds $75,000). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

8.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C.A. § 1391(b) and (c).

9.     This is an action brought pursuant to The Civil Rights Act of 1964, as amended 2001, 42 U.S.C. § 2000e, *et seq*. (Title VII) and The Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101, *et seq*. (ELCRA) seeking injunctive relief, and equitable, declaratory, and money damages against Defendant, as set forth herein.

10.     On December 15, 2020, in the middle of a global pandemic, Plaintiff filed an Inquiry electronically with the EEOC seeking to file a Charge of Discrimination.  It was not until March 30, 2021 that EEOC provided a date and time for a phone appointment.

11.     On April 19, 2021, within 300 days of Defendant's adverse employment action, a Charge of Discrimination was issued by the Equal Employment Opportunity Commission ("EEOC") for Plaintiff alleging

discrimination based on race, sex, and disability and retaliation for asserting such claims.

12.     Plaintiff's Charge was filed within 300 days of the commission of the unlawful employment practices alleged in this Complaint.

13.     On or about May 14, 2021, Plaintiff received his Notice of Suit Rights on his Charge, and he has filed this Complaint within 90 days of receiving his Notice of Rights.

## FACTUAL ALLEGATIONS

14.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

15.     Plaintiff is a Black male who was employed by Defendant throughout the period of time giving rise to his Complaint.

16.     At all times relevant hereto, Plaintiff performed his job diligently.

17.     Plaintiff was subjected to race discrimination and retaliation by Defendant and/or by and through Defendant's agents, servants and/or employees, said acts being made unlawful by the Elliott-Larsen Civil Rights Act, M.C.L.A. §37.2101, *et seq*.

18.     There was an underlying atmosphere of racial hate and discrimination at Defendant's GM Powertrain Plant where Black employees were subject to vilification and racially hostile remarks and epithets as outlined and brought to

light in lawsuits filed in 2018 to the present and a Civil Rights Commission Investigation.  Such harms included, but were not limited to: nooses, Nazi imagery, i.e., swastikas, White-Only signs, symbols of White power, ethnic slurs, hate speech, and racial jokes inside the factory;

19.     Throughout 2019 and beyond, as a result of a lawsuit filed in 2018 and the brave efforts of the Plaintiffs in that matter and the Civil Rights Commission, these racist activities were widely publicized.

20.     GM never fired any White employee for any of the racist actions outlined above.

21.     Plaintiff's employment with Defendant began on or about May 1996 and Plaintiff was employed as a College Student Intern in Defendant's Toledo, OH GM Powertrain Plant.  Plaintiff became a Supervisor-In-Training in 1996 and a Production Supervisor later that same year.  He was made a Group Leader in 2018 and held that position until his unlawful termination in June 2020.

22.     During his employment with Defendant, Plaintiff was subjected to many forms of discrimination and harassment, often times being too concerned with keeping his job and fearing retaliation for reporting.

23.     Plaintiff shared with Labor Relations in January 2019 about racially insensitive and discriminatory comments made during a prior meeting on race relations.

24.     The meeting was talking about nooses (as this had been a problem in the GM Powertrain Plant).  Plaintiff shared a story of a time where he felt the sting of racism and race hatred where a young Black man was lynched (hung by a noose) for dating a young White woman.  When the ambulance left the scene it drove through the area with the door open so that the body of the murdered Black man was visible to those in the neighborhood.

25.     A White employee, after Plaintiff shared his story, asked in response to the young Black man being hanged, "So, what crime did he commit."

26.     Plaintiff was upset by this insensitive and discriminatory comment and left the meeting.

27.     Upon information and belief, the same employee or another in attendance went on to make other racially discriminatory comments including "I never knew a Black person who was lynched that did not deserve it."

28.     In June 2019, Plaintiff reported to Labor Relations issues of a discriminatory nature and aggressive behavior towards him by a White employee as well as other incidents that occurred to other employees in his department, including: a White employee asking if a Black employee "had any 'White' in her;" a Supervisor stating "you know how those Mexicans are;" and, the failure of a White Team Leader to train minority team members.

29.    Defendant had previously conducted audits wherein employees would search the Plant for graffiti and check for offensive language or other offensive material.

30.    Defendant had stopped that practice sometime in or around early 2020, months prior to the murder of George Floyd at the hands of Minneapolis Police Officers in May 2020.

31.    Defendant, in response to the public concerns and racial tensions identified after the murder of George Floyd, decided to hold an "all inclusion" meeting.

32.    Plaintiff was directed to attend the "all inclusion" meeting.  When Plaintiff questioned why he was being directed to attend the meeting, he was told that it was "obvious" - referring to his race and/or the color of his skin.

33.    On or about June 19, 2020 ("Juneteenth"), Plaintiff was informed that Defendant would hold an organized "moment of reflection" to observe Juneteenth and the memory of George Floyd's death.

34.    Plaintiff was directed that immediately following this "moment of reflection", Plaintiff was to complete the previously discontinued "guarding and graffiti audit."

35.    Plaintiff was very upset by this directive as this followed the meeting and plant-wide "moment of reflection," which put the issues of race discrimination

and hatred at the forefront of a workplace that had a grim history of troubling race discrimination and hatred.

36.     Plaintiff questioned this directive and shared his concerns of being sent throughout this environment at this time to search for racially targeted graffiti. He asked, to emphasize the very gravity of this request, whether he was meant to "go around and look to see if someone had written 'Nigger' or other derogatory words."

37.     Plaintiff's Supervisor told him that he understood but his "personal feelings didn't matter."

38.     Plaintiff apologized for using the word "Nigger" to his colleagues but this is something that has occurred in Defendant's GM Powertrain Plant in the recent past.

39.     Plaintiff spoke to his Supervisor and his boss, who asked him to go to Labor Relations, Plaintiff declined saying that he felt any support he had was gone and shared the issues that had previously been brought to Labor Relations as well as other issues identified where he had been told not to report, including instances of a noose being placed on his desk and having a White employee point to a Black employee and say "that lazy Nigger over there."

40.     Plaintiff was then directed to report to Labor Relations.   Plaintiff thought that he was being directed to Labor Relations to help him with what he was feeling about the directive and the concerns he expressed.

41.     Plaintiff shared what happened that day and at previous time as well as his feelings and thoughts to Labor Relations and at the end of his interview he was told to "go home."

42.     After Plaintiff's complaint of such harassment and discrimination, he was not allowed to return to work the following Monday, where upon his arrival he was sent home by Labor Relations and said that there was an open investigation and he would be called when he could return to work.

43.     Defendant terminated Plaintiff on or about June 26, 2020.  He was told he had violated Defendant's Code of Conduct and Winning With Integrity Policy.

44.     Other similarly situated employees, who were not in Plaintiff's protected class based on his race and/or color were not terminated.   White employees were not terminated for their discriminatory actions and language as outlined above.

45.     During his employment, Plaintiff was subjected to disparate treatment and/or discrimination based on his race and/or color, Black, and/or his engagement

in protected activity by Defendant and/or Defendant's employees, agents, and/or servants, as set forth herein.

46.     The discrimination and harassment was not adequately investigated and/or remediated by Defendant and/or its agents, servants, and/or employees.

47.     Plaintiff was retaliated against by Defendant and/or Defendant's employees, agents, and/or servants for complaining about discrimination and harassment.

### COUNT I – RACE/COLOR DISCRIMINATION<br>IN VIOLATION OF 42 U.S.C. § 2000e, ET SEQ. (TITLE VII)

48.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

49.     Plaintiff is a Black man and entitled to the protections of 42 U.S.C. § 2000e, *et seq.* (Title VII).

50.     At all relevant times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of 42 U.S.C. § 2000e, *et seq.* (Title VII).

51.     Defendant, by and through its agents, servants and/or employees, intentionally discriminated against Plaintiff on account of his race and/or color in violation of 42 U.S.C. § 2000e, et seq. (Title VII), by the following acts:

        a. constructively discharging and demoting and/or otherwise discriminating against Plaintiff with respect to his employment,

compensation or a term, condition, or privilege of employment, because of race and/or color;

b. limiting, segregating and/or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of race and/or color;

c. segregating, classifying and/or otherwise discriminating against Plaintiff on the basis of race and/or color with respect to a term, condition, or privilege of employment, including a benefit plan or system; and

d. failing to provide a work environment free from racial and/or color discrimination.

52. As a direct and proximate result of Defendant's violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

53. As a further direct and proximate result of Defendant's violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to obtain legal services in order to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff MARIO L. PATTERSON prays that this Honorable Court grant the following remedies:

A   declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of 42 U.S.C. § 2000e, et seq. (Title VII);

B.   award Plaintiff all lost wages, past and future, to which he is entitled;

C.   award Plaintiff compensatory damages;

D.   award Plaintiff punitive damages;

E.   award Plaintiff reasonable attorney fees, costs and interest; and

F.   award such other relief as this Court deems just and proper.

## COUNT II – RETALIATION
## IN VIOLATION OF 42 U.S.C. § 2000e, ET SEQ. (TITLE VII)

54.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

55.   After making complaints of race discrimination, Plaintiff was subject to retaliation and further discrimination by Defendant and its agents, servants and/or employees, including, but not limited to termination from his employment.

56.   During the time Plaintiff was employed by Defendant, Plaintiff opposed race and/or color discrimination based on Title VII.

57.   Plaintiff was subjected to discrimination and other retaliatory acts by Defendant and its agents, servants and/or employees in retaliation for his opposition

to civil rights violations and having complained about race and/or color discrimination as described above, in violation of Title VII.

58.     Defendant and its agents, servants and/or employees actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

59.     Plaintiff was terminated by Defendant and its agents, servants and/or employees in retaliation for his opposition to civil rights violations, in violation of Title VII.

60.     As a direct and proximate result of Defendant's and its agents, servants and/or employees retaliation in violation of Title VII, Plaintiff has suffered bodily injury, depression, loss of standing in the community and among his peers and family, emotional and physical distress, mental and physical anguish, humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

61.     As a further direct and proximate result of Defendant's and its agents, servants and/or employees retaliation, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future.

WHEREFORE, Plaintiff MARIO L. PATTERSON prays that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation

of Title VII;

b. Award Plaintiff all lost wages, past and future, to which he is entitled;

c. Award Plaintiff compensatory damages;

d. Award Plaintiff punitive damages;

e. Award Plaintiff reasonable attorney's fees, costs, and interest;

f. Award such other relief as this Court deems just and proper.

## COUNT III
## RACE AND/OR COLOR DISCRIMINATION IN VIOLATION OF ELCRA

62. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

63. As an employer and/or agent within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), Defendant owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of his race and/or color.

64. Plaintiff MARIO L. PATTERSON is a Black male, and otherwise a member of a protected class entitled to the protections afforded by ELCRA.

65. Plaintiff's race and/or color was a factor that made a difference in Defendant's decision to subject him to the wrongful and discriminatory treatment,

including a hostile environment, harassment, termination and/or other disparate treatment.

66.    Defendant and its agents, representatives, and/or employees, were predisposed to discriminate on the basis of race and/or color and acted in accordance with that predisposition.

67.    While employed by Defendant, Plaintiff was subjected to race and/or color discrimination by Defendant and its agents, servants and/or employee as set forth herein, said acts being made unlawful by the ELCRA, M.C.L.A.§ 37.2101, *et seq*.

68.    Defendant and its agents, servants and/or employees, intentionally discriminated against Plaintiff on account of his race and/or color in violation of the ELCRA by the following acts:

a.    Terminating or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because of race and/or color;

b.    Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of race and/or color;

c.    Segregating, classifying or otherwise discriminating against Plaintiff on the basis of race and/or color with respect to a term, condition or privilege of employment, including a benefit plan or system;

d.    Creating a hostile work environment on the basis of Plaintiff's race and/or color; and/or

    e.    Failing to provide a work environment free from race and/or color discrimination.

69.    As a direct and proximate result of Defendant's violation of the ELCRA, as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

70.    As a further direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff MARIO L. PATTERSON prays that this Honorable Court grant the following remedies:

    a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Elliott-Larsen Civil Rights Act;

    b.    Award Plaintiff all lost wages, past and future, to which he is entitled;

    c.    Award Plaintiff compensatory damages;

    d.    Award Plaintiff reasonable attorney's fees, costs, and interest;

e.      Award such other legal and equitable relief as this Court deems just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF ELCRA

57.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

58.     Plaintiff MARIO L. PATTERSON engaged in conduct protected under the ELCRA, i.e., complaining of and opposing the discriminatory conduct of Defendant and its agents, servants, and/or employees, as set forth herein.

59.     Defendant had knowledge of Plaintiff's protected activity.

60.     Defendant subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, terminating Plaintiff.

61.     Plaintiff's protected conduct was a significant factor in Defendant's decision to retaliate against them.

62.     The retaliation would not have occurred had Plaintiff not engaged in activity protected by the ELCRA.

63.     Defendant's actions were retaliatory and in violation of the ELCRA.

64.     As a direct and proximate result of Defendant's violation of ELCRA as set forth herein, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

65.     As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff MARIO L. PATTERSON prays that this Honorable Court grant the following remedies:

a.      Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Elliott-Larsen Civil Rights Act;

b.      Award Plaintiff all lost wages, past and future, to which he are entitled;

c.      Award Plaintiff compensatory damages;

d.      Award Plaintiff reasonable attorney's fees, costs, and interest;

e.      Award such other legal and equitable relief as this Court deems just and proper.

## COUNT V
## WRONGFUL TERMINATION VIOLATION OF 42 U.S.C. § 1981

66.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

67.     Under 42 U.S.C. § 1981, Plaintiff, a Black man, has the right to work free from racial discrimination.

68.     Defendant, in its failure to significantly and meaningfully address the racially hostile environment in which Plaintiff was compelled to work, violated 42 U.S.C. § 1981.

69.     Defendant violated Plaintiff's civil rights by fostering a racially hostile, intimidating and offensive environment which was not welcome and which unreasonably interfered with Plaintiff's rights to equal employment opportunity.

70.     Defendant discriminated against Plaintiff on the basis of his race and/or color, and denied him employment opportunities enjoyed by White people.

71.     Defendant engaged in racially discriminatory practices toward Plaintiff with malice or with reckless indifference to their protected rights, and he is entitled to an award of punitive damages under 42 U.S.C. § 1981(a).

72.     As a result of Defendant's violation of his civil rights under 42 U.S.C. §1981, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

73.   As a further direct and proximate result of Defendant's violation of his civil rights under 42 U.S.C. §1981, Plaintiff has been placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff MARIO L. PATTERSON requests that this Honorable Court grant the following remedies:

   a. Declare pursuant to 28 U.S.C. § 2201 that the aforementioned practices and actions of Defendants constitute unlawful discrimination in violation of the U.S. Constitution and 42 U.S.C. § 1981;

   b. Preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining any further discrimination against Plaintiff because of or on the basis of his race;

   c. Award Plaintiff all lost wages, past and future, to which he is entitled;

   d. Award Plaintiff compensatory damages;

   e. Award Plaintiff punitive damages;

   f. Award Plaintiff reasonable attorney's fees, costs, and interest; and

   g. Award such other relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this complaint.

**BOGAS & KONCIUS P.C.**

By:    /s/Brian E. Koncius_____
          BRIAN E. KONCIUS (P69278)
          Attorneys for Plaintiff
          31700 Telegraph Rd, Ste 160
          Bingham Farms, MI  48025
          (248) 502-5000
          bkoncius@kbogaslaw.com
Date:  August 9, 2021     office@kbogaslaw.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIO L. PATTERSON,

               Plaintiff

-v-

               Case No. 21-
               Hon.
               Magistrate

GENERAL MOTORS COMPANY, a
Delaware Corporation,

               Defendant.

_____

BOGAS & KONCIUS P.C.
BRIAN E. KONCIUS (P69278)
Attorneys for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI  48025
(248) 502-5000

---

## JURY DEMAND

Plaintiff MARIO L. PATTERSON, by and through his attorneys, hereby demands a jury trial on all issues.

               **BOGAS & KONCIUS P.C.**

               By:    /s/Brian E. Koncius_____
                         BRIAN E. KONCIUS (P69278)
                         Attorneys for Plaintiff
                         31700 Telegraph Rd, Ste 160
                         Bingham Farms, MI  48025
                         (248) 502-5000
                         bkoncius@kbogaslaw.com

Date:  August 9, 2021           office@kbogaslaw.com